**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JANE DOE, | : | CIVIL ACTION NO.   1:18-cv-11134 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **COMPLAINT** |
| DEVYANI KHOBRAGADE and | : | |
| AAKASH SINGH RATHORE, | : | **Jury Trial Demanded** |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Jane Doe[1] ("Ms. Doe" or "Plaintiff"), by and through her counsel, The Legal Aid Society and Dechert LLP, for her Complaint against Defendants Devyani Khobragade ("Defendant Khobragade") and Aakash Singh Rathore ("Defendant Rathore") (together, "Defendants"), respectfully alleges upon knowledge as to herself and her acts, and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1.     Using false representations of adequate pay and reasonable working conditions, Defendants knowingly and willfully lured Plaintiff from Delhi, India to the United States to be employed as a domestic worker. While she worked in New York for Defendants, Plaintiff was subjected to harsh working conditions with little pay, in violation of anti-trafficking laws and wage and hour laws.

2.     While working for Defendants from approximately November 24, 2012 until June 22, 2013, Defendants forced Plaintiff to work at least 16 hours a day, seven days per week with

---

[1] Plaintiff has filed a motion to proceed by pseudonym contemporaneously with this Complaint.

1

few days off and few breaks, despite prior representations that Plaintiff would work no more than a 40-hour workweek, with two days off per week (although she would occasionally be required to work a half day on Saturday).

3.      Defendants failed to pay Plaintiff her legally entitled wages for all hours that she worked for Defendants. She was paid only 30,000 rupees (approximately $553 as of December 1, 2012) per month. Overall, Plaintiff was paid well below the minimum wage required by the New York Labor Law.

4.      Defendants lured Plaintiff to the United States with false promises of adequate wages and more reasonable work hours. Instead, Defendants confiscated Plaintiff's passport and forced her to labor in their household with minimum compensation, extremely long hours, and little time off. Defendants exercised almost complete control over Plaintiff's living and working conditions.

5.      Plaintiff suffered grave mistreatment under Defendants' control and now seeks redress for harm caused to her by Defendants' unlawful conduct under the Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), the New York State Labor Law, and common law.

**JURISDICTION**

6.      Jurisdiction is conferred on the Court by 28 U.S.C. §§ 1331. Plaintiff brings claims under the TVPRA, 18 U.S.C. § 1595(a).

7.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because these claims form part of the same case or controversy under Article II of the U.S. Constitution.

8.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

9.     At all times relevant to this action, Plaintiff worked for Defendants at their residence in New York, New York.

10.     At all times relevant to this action, Plaintiff was a domestic worker employed by Defendants as defined by New York Labor Law.

11.     Plaintiff is a citizen of India and currently resides in New York City.

12.     Upon information and belief, Defendant Khobragade is a citizen of India, and currently resides in India.

13.     Upon information and belief, Defendant Rathore is a citizen of the United States and currently resides in Tennessee.

## FACTUAL BACKGROUND

14.     Plaintiff was born and raised in Delhi, India.

15.     Starting in or approximately 2000 to 2012, Plaintiff worked as both a nanny and/or housekeeper for several families in Delhi.

16.     In or around the summer of 2012, Plaintiff heard that Defendant Khobragade was looking for a domestic worker to care for her children and do housework in the United States.

17.     Upon information and belief, Defendant Khobragade was an Indian Foreign Service officer who worked as Deputy Consul General in the Consulate General of India in New York, starting in or around November 2012.

18.     Plaintiff applied for the job and, in or around fall 2012, Plaintiff went to Defendant Khobragade's house in Delhi for an initial interview. At this initial meeting, Defendant Khobragade informed Plaintiff that the job was in New York and asked Plaintiff if she had an Indian passport (Plaintiff's 'Blue Passport'). Plaintiff responded that she did, and Defendant Khobragade asked Plaintiff to return the following day with her Blue Passport. Plaintiff did so, and Defendant Khobragade then confiscated her Blue Passport. To this day, Defendants have not returned Plaintiff's Blue Passport.

19.     The following day, Plaintiff and her husband went to Defendant Khobragade's house for a second interview with both Defendant Khobragade and her husband, Defendant Rathore. Defendant Rathore informed Plaintiff that, if she was hired, she would work Monday through Friday from 7:00am to 12:00pm and 6:30pm to 8:30pm, and that she would occasionally be required to work from 8:00am to 1:00pm on Saturday. Defendant Rathore told Plaintiff that she would have Sundays off.

20.     Defendants also agreed to pay a salary of 30,000 rupees per month (approximately $553), if Plaintiff was hired. This is less than the minimum wage and overtime pay requirements under the New York Labor Law. Defendants further told Plaintiff that if she performed well, they would increase her pay over time.

21.     Plaintiff was required to do a short trial period of a few days at Defendant Khobragade's house in Delhi. After the trial period, Defendants agreed to hire Plaintiff as a domestic worker in New York on the aforementioned terms of employment for a period of approximately three years.

22.     Defendant Khobragade informed Plaintiff that she would be able to return to India once during the duration of her employment to visit her family, and that Defendant Khobragade

would 'take care of everything" with regard to her trip to and from New York and India. Defendant Rathore further explained that Plaintiff's salary would be deposited into an account in India, to which Plaintiff's husband had access, once per month.

23.     On or around November 11, 2012, Defendant Khobragade presented Plaintiff with a contract containing fraudulent terms of employment (the "First Contract"). The contract was in English, which Plaintiff did not understand since she did not read or speak English at the time. Defendant Khobragade explained to Plaintiff what was contained in the contract, including but not limited to that Plaintiff would earn $9.75 U.S. dollars an hour, that she would be required to work 40 hours a week, and would receive overtime pay if she worked more than 40 hours per week. These provisions were consistent with federal and New York state wage laws and required compensation of approximately four to five times the amount of what Plaintiff was actually promised. The First Contract also provided that Plaintiff be provided with 7 paid holidays, 7 paid sick days, and 7 paid vacation days.

24.     Upon information and belief, Defendants created the First Contract solely for the purpose of purposely and fraudulently procuring a visa for Plaintiff to enter the United States and it did not contain the contracted terms of employment between Plaintiff and Defendants.

25.     Upon information and belief, Defendant Khobragade knew that if she disclosed the truth about the terms of their agreement, including compensation, Plaintiff's visa would not be approved.

26.     Shortly thereafter, Plaintiff was scheduled for an interview with the U.S. Embassy in Delhi to receive approval for an A-3 visa, for temporary employment in the United States.

27.     Prior to the interview, Defendant Khobragade instructed Plaintiff to tell the U.S. Embassy officials that she would be making $9.75 an hour, not the actual agreed-upon

30,000 rupees per month, and to memorize the other terms of employment set forth in the First Contract in case the U.S. Embassy officials asked about them. Fearing loss of her new employment, Plaintiff did as Defendant Khobragade instructed.

28.     A few days later, Plaintiff was approved for an A-3 visa, and she received a white business passport (Plaintiff's "White Passport"). As instructed by Defendant Khobragade, Plaintiff gave the White Passport to the guard at Defendant Khobragade's house. Defendant Khobragade explained that she would keep the White Passport for the time being and hold onto the Blue Passport for safekeeping.

29.     On or around November 23, 2012, the same day Plaintiff departed for the United States, Defendant Khobragade summoned Plaintiff to her house and presented Plaintiff with another contract to sign, which was also written in English (the "Second Contract"). As explained by Defendant Khobragade, this contract reflected their original agreement, which was that Plaintiff would be paid the legally insufficient wage of 30,000 rupees a month and would be provided at least one day off per week, which would be on Sunday. The Second Contract also provided that Plaintiff would be provided "full medical care, full board and lodging . . . at Employer's expenses, with no unpermitted deductions made."

30.     In addition, the Second Contract stated that the "[t]he Employee's passport and visa will be in the sole possession of the Employee," "[a] copy of th[e] contract and other personal property of the Employee will not be withheld by the Employer for any reason," and "[t] he Employee will not be required to remain on the Employer's premises after working hours unless properly compensated."

31.     Defendant Khobragade informed Plaintiff that she was not allowed to tell anyone how much she was actually being paid. As of December 1, 2012, 30,000 rupees per month would amount to approximately $553.

32.     Plaintiff felt that she had no choice but to sign the Second Contract, as Defendant Khobragade was in possession of Plaintiff's passports, and Plaintiff was due to depart for the United States that same night.

33.     Shortly thereafter, Defendant Khobragade took Plaintiff to the airport and gave Plaintiff back the White Passport to board the plane. On or around November 24, 2012, Plaintiff arrived in New York. Shortly thereafter, Defendant Khobragade retrieved and retained Plaintiff's White Passport.

34.     Initially, for the first few weeks of her employment, Plaintiff lived with Defendants and their children at a hotel in New York City, because Defendants' home was still occupied by the prior tenants and repairs needed to be done.

35.     In or around mid-December 2012, Plaintiff and Defendants moved into Defendants' apartment in Manhattan.

36.     Plaintiff had her own bedroom, but Plaintiff's room did not have a lock and Defendant Khobragade frequently went into Plaintiff's room without knocking or permission.

37.     Plaintiff's duties for the family included cooking, cleaning, other household chores, and caring for Defendants' two young daughters, including feeding them, packing their lunches, taking and picking them up to and from school, assisting them with schoolwork, putting them to bed, and changing the younger child's diaper at all times of the night.

38.     Plaintiff also had to do the grocery shopping for the household. Defendant Khobragade required Plaintiff to present her with the receipts, and would get angry if Plaintiff

purchased items for herself. Therefore, Plaintiff usually ate whatever was left of the family's leftovers.

39.     For about two months, Plaintiff's work began at approximately 5:00am and ended at 9:30pm, although many times she worked past 9:30 and needed to always be on call if Defendant Khobragade needed her. Plaintiff worked 7 days per week, with few days off and few breaks. On several occasions, Plaintiff was forced to get up between 4:00-4:30AM to wake Defendant Khobragade for early appointments, set out her clothes, and prepare her food.

40.     Plaintiff asked if she could have some time off but Defendant Khobragade told her she would only earn her full salary if she worked seven days a week. After about two months, Plaintiff was allowed time on Sundays to go to church, but was told that she needed to be home by 5:00 pm at the latest.

41.     Even when Plaintiff was able to take some time off on Sundays to go to church, Defendant Khobragade would call her regularly to check in on her. Plaintiff always had to ask permission if she wanted to leave the apartment, which she rarely did since she had little time for herself.  When Plaintiff did ask permission, Defendant Khobragade usually denied her.

42.     On one occasion, Plaintiff left the house to go to a free clinic to see a doctor, and when she returned Defendant Khobragade scolded Plaintiff and told her she had no permission to leave.

43.     Whenever Plaintiff questioned the amount of work she was doing for Defendants, Defendant Khobragade berated and became angry with Plaintiff, saying that Plaintiff was hired to perform certain work and it was her job to make sure that she completed her tasks.

44.     Defendant Khobragade frequently yelled and verbally abused Plaintiff, making unrelenting demands on Plaintiff's time to continuously do household chores. Because Plaintiff was scared of Defendant Khobragade, she did what she was told.

45.     Plaintiff requested that she be able visit her family in India twice, but Defendant Khobragade refused, saying that Plaintiff could not return until the end of her contract.

46.     Plaintiff was never given any sick leave, holidays, or vacation days.

47.     In or around January 2013, Plaintiff cut her finger severely and was bleeding heavily. She informed Defendant Khobragade, because she wanted to go to the doctor. However, Defendant Khobragade only told Plaintiff to "be more careful next time."

48.     In or around February 2013, Plaintiff became very ill. Plaintiff requested to see a doctor, but Defendant Khobragade forced Plaintiff to continue to work. After about a week, Defendant Khobragade finally took Plaintiff to see a doctor and then took Plaintiff to the pharmacy to get the medicine, but forced Plaintiff to walk home afterwards. She also told Plaintiff that she should "not get sick next time." Plaintiff did not get any days off to rest, although she was in pain and needed some rest to recover.

49.     In or around June 2013, while preparing meals for Defendants and one or two guests who were coming by later in the day, Defendant Khobragade became angry with Plaintiff because her food was not hot enough. She yelled at Plaintiff, broke some dishes, and brought her hands close to Plaintiff's face in a threatening manner. Plaintiff begged Defendant Khobragade to stop yelling, and Defendant Khobragade eventually left the room.

50.     A few days later, Plaintiff requested that Defendant Khobragade allow her to leave and return to India, but Defendant Khobragade refused. Because the situation was becoming unbearable for Plaintiff, Plaintiff then asked Defendant Khobragade if she could

continue working for her but reside elsewhere. Defendant Khobragade told her she couldn't do that, because the contract required that Plaintiff reside with them.

51.     Plaintiff asked Defendant Khobragade for her Blue Passport back, but Defendant Khobragade refused to return it to her. Plaintiff was unable to return to India because she did not have her passport in addition to not having the finances to purchase a plane ticket.

52.     Thereafter, Plaintiff explained to Defendant Rathore what had happened earlier and requested that he give her the Blue Passport back and start giving her salary directly to her rather than depositing the amount in a bank account in India. Plaintiff believed that she might be able to save up enough to buy a plane ticket home if she was paid directly. Defendant Rathore refused.

53.     On or around June 20, 2013, Defendants paid Plaintiff only 20,000 rupees rather than 30,000 rupees, directly into her bank account in India. Plaintiff realized the 10,000 rupees had been taken out because Defendant Khobragade had given her money earlier that month to purchase some things for herself and, without telling Plaintiff, had deducted that money from her paycheck.

54.     Because she could no longer live under such harsh and abusive working conditions, Plaintiff decided that she had to leave Defendants' apartment. On June 22, 2013, when Defendant Khobragade was out of town for the weekend, Plaintiff escaped from Defendants' residence.

55.     Although it was difficult, Plaintiff was able to stay with a friend. After a few months of struggling to find a job, Plaintiff was able to find a temporary babysitting job where she resided with the family.

56.     Later, Plaintiff was referred to seek help from Access Immigration, which was a New York immigration assistance organization in Manhattan.

57.     In or around early July 2013, staff at Access Immigration contacted Defendant Khobragade to demand that she give Plaintiff back her passports and the money that she is owed. Later, Defendant Khobragade's employees from the Indian Consulate went to the Access Immigration office and demanded that Plaintiff sign a document written in English, which said that she had stolen from Defendants. Plaintiff refused to sign. Although Defendant Khobragade and the Consulate employees were told to leave and left the office, they waited outside of the entrance to the building until Plaintiff came out.  Plaintiff was afraid to leave the building.

58.     Shortly afterwards, Access Immigration contacted Safe Horizon, a victim services agency for survivors of abuse and violence, who came to the office with several police officers to escort Plaintiff out of the building safely.

59.     Upon information and belief, Defendants retaliated against Plaintiff for escaping from Defendants.

60.     Defendant Khobragade's father, Uttam Khobragade, is a powerful politician in India and currently serves in the Indian National Congress as an All India Congress Committee member. Between June and August 2013, following Plaintiff's escape from Defendant Khobragade's apartment, Uttam Khobragade called Plaintiff's husband in India several times and threatened him, pressuring him to locate and disclose Plaintiff's location.

61.     Upon information and belief, Plaintiff's husband and son were contacted by police officers and taken into custody several times during the summer of 2013 and were questioned for hours regarding Plaintiff's whereabouts. Upon information and belief, Defendants and/or Uttam Khobragade orchestrated these interrogations.

62.     In addition, Plaintiff's husband, her children, and her extended family were harassed regularly about Plaintiff's whereabouts. Upon information and belief, Defendants and/or Uttam Khobragade planned the aforementioned harassment.

63.     On or about November 19, 2013, based on a public complaint filed in July 2013 by Defendant Khobragade, an arrest warrant was issued in India charging Plaintiff with extortion, cheating, and participating in a conspiracy. This complaint was filed by Defendant Khobragade and contained false statements.

**COUNT I**

**Forced Labor**

(18 U.S.C. §§ 1589, 1595)

(Against Both Defendants)

64.     Plaintiff alleges and re-alleges the paragraphs above.

65.     Under 18 U.S.C. § 1589(a), it is unlawful to knowingly provid[e] or obtain[] the labor or services of a person . . . (1) by means of force, threats of force, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

66.     Defendants knowingly obtained the labor and/or services of Plaintiff by force, coercion and/or abuse or threatened abuse of law or the legal process.

67.     Defendants knowingly obtained the labor and/or services of Plaintiff by confiscating her passports and by using force, threats and coercion to prevent Plaintiff from escaping from Defendants.

68.     Under 18 U.S.C. § 1589(b), it is unlawful to "benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means describe in subsection (a)."

69.     Defendants knowingly benefited financially by obtaining Plaintiff's labor and services by engaging in conduct violating 18 U.S.C. § 1589(a) above.

70.     Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. § 1589.

71.     Plaintiff suffered injuries as a result of these actions.

72.Plaintiff is entitled to an award of compensatory and punitive damages to be determined, attorneys' fees, and costs.

## COUNT II

### Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor

(18 U.S.C. §§ 1590 and 1595)

(Against Both Defendants)

73.     Plaintiff alleges and re-alleges the paragraphs above.

74.     Defendants knowingly and willfully held Plaintiff in involuntary servitude, in violation of 18 U.S.C. § 1584, which incorporates the Thirteenth Amendment's bar on slavery and involuntary servitude.

75.     Defendants knowingly and willfully brought Plaintiff to the U.S. to be held in a condition of involuntary servitude, in violation of 18 U.S.C. § 1584, which incorporates the Thirteenth Amendment's bar on slavery and involuntary servitude.

13

76.     Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[], transport[], provid[e], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

77.     Defendants violated 18 U.S.C. § 1590(a) by knowingly and willfully transporting and obtaining Plaintiff for peonage, slavery, involuntary servitude and force labor.

78.     Plaintiff suffered injuries as a result of these actions.

79.     Plaintiff is entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorneys' fees, and costs.

## COUNT III

### Involuntary Servitude

(18 U.S.C. §§ 1584, 1595)

(Against Both Defendants)

80.     Plaintiff alleges and re-alleges the paragraphs above.

81.     Under 18 U.S.C. § 1584, it is unlawful to "knowingly and willfully hold[] to involuntary servitude . . . or bring[] within the United States any person so held."

82.     "Involuntary servitude" includes "a condition of servitude induced by means of . . . . any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or . . . the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102 (6).

83.     In violation of 18 U.S.C. § 1584, Defendants brought Plaintiff to the United States for the purpose of involuntary servitude and knowingly and willfully subjected Plaintiff to a condition of involuntary servitude for over seven months in the United States by confiscating her

passports. Defendants further held Plaintiff in a condition of involuntary servitude by severely limiting her access to money and confining her in their home.

84.     Defendants used fraudulent misrepresentations, threats, abuse, coercion and intimidation to hold Plaintiff in their employment and forced her to work without paying her the compensation required by law.

85.     Through the conduct of Defendants alleged herein, acting individually and in concert, Defendants caused Plaintiff to have and to believe she had no way of avoiding continued service or confinement in violation of the Thirteenth Amendment's prohibition on involuntary servitude.

86.     Plaintiff suffered injuries as a result of these actions.

87.     Plaintiff is entitled to an award of compensatory and punitive damages to be determined, attorneys' fees, and costs.

## COUNT IV

### Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor

(18 U.S.C. § 1592, 1595)

(Against Both Defendants)

88.     Plaintiff alleges and re-alleges the paragraphs above.

89.     Under 18 U.S.C. § 1592(a)(1), it is unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594 (a)."

90.     Defendants knowingly removed, confiscated, or possessed Plaintiff's passports in violation of 18 U.S.C. §§ 1584, 1589, 1590, and 1594(a).

91.     Defendants knowingly removed, confiscated, or possessed Plaintiff's passports to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiff's liberty to move or travel, in order to maintain the labor or services of Plaintiff.

92.     Plaintiff suffered injuries as a result of these actions.

93.     Plaintiff is entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorneys' fees, and costs.

## COUNT V
## Benefitting Financially from Trafficking in Persons
(18 U.S.C. §§ 1593A, 1595)

(Against Both Defendants)

94.     Plaintiff alleges and re-alleges the paragraphs above.

95.     18 U.S.C. § 1593A makes it unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any activity in violation of section 1581(a), 1592, or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation."

96.     Defendants knowingly benefitted financially or by receiving something of value, namely Plaintiff's domestic worker services, from participation in a venture that engaged in activities in violation of 18 U.S.C. §§ 1592 and 1595(a) and either knew or was in reckless disregard of the violation of this provision.

97.     Plaintiff suffered injuries as a result of these actions.

98.     Plaintiff is entitled to an award of compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## COUNT VI

### Attempt to Violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595

(Against Both Defendants)

99.    Plaintiff alleges and re-alleges the paragraphs above.

100.    18 U.S.C. § 1594(a) makes it unlawful to "attempt[] to violate section 1581, 1583, 1584, 1589, 1590 or 1591."

101.    In violation of 18 U.S.C. § 1594(a), Defendants attempted to violate §§ 1584, 1589, and 1590 by bringing Plaintiff to the United States for the purpose of involuntary servitude and knowingly and willfully subjected Plaintiff to a condition of involuntary servitude for over seven months in the United States in violation of 18 U.S.C. § 1584, and by agreeing to obtain or provide Ms. Doe's services in violation of 18 U.S.C. § 1589, by trafficking Plaintiff in violation of 18 U.S.C. § 1590.

102.    Plaintiff suffered injuries as a result of these actions.

103.    Plaintiff is entitled to an award of compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## COUNT VII

### Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, 1592, 1594, 1595

(Against Both Defendants)

104.    Plaintiff alleges and re-alleges the paragraphs above.

105.    18 U.S.C. § 1594(b) makes it unlawful to "conspire[] with another to violate section 1581, 1583, 1589, 1590 or 1592."

106.    Defendants conspired to violate 18 U.S.C. §§ 1589, 1590, and 1592 by agreeing to obtain or provide Ms. Doe's services in violation of 18 U.S.C. § 1589, by trafficking Plaintiff in violation of 18 U.S.C. § 1590, and by confiscating Plaintiff's passports in violation of

18 U.S.C. § 1592. Defendants came to an understanding to commit these violations through the course of their dealings.

107.    Plaintiff suffered injuries as a result of these actions.

108.    Plaintiff is entitled to an award of compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## COUNT VIII
## New York State Minimum Wage Violations
(N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*)
(Against Both Defendants)

109.    Plaintiff alleges and re-alleges the paragraphs above.

110.    Defendants obtained Plaintiff's services in violation of the state minimum wage.

111.    The New York Labor Law requires employers to pay a minimum hourly wage for covered employees in New York State. N.Y. Lab. L. § 652; 12 N.Y.C.R.R. § 142-2.1.

112.    At all times relevant to this action, Plaintiff was an employee covered by state minimum wage law. N.Y. Lab. L. §§ 2, 651-652; 12 N.Y.C.R.R. § 142-2.1.

113.    At all times relevant to this action, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2, 651.

114.    At all times relevant to this action, Defendants were employers within the meaning of New York Labor Law. N.Y. Lab. L. §§ 2, 651.

115.    In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff the proper minimum wage, as required by New York state law. N.Y. Lab. L. § 650 *et seq.*

116.    During Plaintiff's employment, the New York State minimum wage was $7.25 per hour.

117.     Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage that Plaintiff should have been paid, liquidated damages, attorneys' fees, and costs.

## COUNT IX

### New York State Overtime Violations

(N.Y. Lab. L. §§ 190 *et seq.* and *650 et seq.*, N.Y.C.R.R. § 142-2.2)

(Against Both Defendants)

118.     Plaintiff alleges and re-alleges the paragraphs above.

119.     In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff's overtime pay for work in excess of forty-four hours per week.

120.     Defendants' intentional failure to pay Plaintiff overtime minimum wages for work over forty-four hours per week violates N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

121.     Plaintiff is entitled to an award of damages for overtime pay for work over forty-four hours per week in an amount equal to the proper state overtime premium that Plaintiff should have been paid, liquidated damages, attorneys' fees, and costs.

## COUNT X

### New York State Spread of Hours Violations

(N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* and N.Y.C.R.R. § 142-2.4)

(Against Both Defendants)

122.     Plaintiff alleges and re-alleges the paragraphs above.

123.     Defendants' intentional failure to pay Plaintiff an extra hour's pay for every day that Plaintiff worked in excess of ten hours violates N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

124.     Plaintiff is entitled to an award of an extra hour's pay for every day that Plaintiff worked in excess of ten hours in an amount pursuant to N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4, liquidated damages, attorneys' fees, and costs.

## COUNT XI
## New York Labor Law, Notice Violation
## N.Y. Lab. L. § 195
(Against Both Defendants)

125.     Plaintiff alleges and re-alleges the paragraphs above.

126.     Employers are required to provide, at the time of hire, "the rate or rates of pay and the basis of the rate, whether they are paid by the hour, shift, day, week, salary, piece, commission or other and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances," among other things. N.Y. Lab. L. § 195(1)(a). This notice must be given in the employee's primary language. *Id.*

127.     Employers must obtain and preserve for six years written acknowledgement that such notice was provided. *Id.*

128.     Defendants failed to provide Plaintiff the notice of her rights upon hire that complied with New York Labor Law. Defendants also failed to obtain written acknowledgement from Plaintiff of notice.

129.     Defendants' failure to provide Plaintiff notice of her rate of pay was willful and not in good faith.

130.     Plaintiff is entitled to an award of damages of fifty dollars for each day that she did not receive the notice required by N.Y. Lab. L. § 195(1)(a), attorneys' fees and costs, together not to exceed $2,500 and injunctive and declaratory relief. N.Y. Lab. L. § 198(1-b).

## COUNT XII

### New York Labor Law, Wage Statement Violation

### N.Y. Lab. L. § 195

(Against Both Defendants)

131.    Plaintiff alleges and re-alleges the paragraphs above.

132.    Employers are required to "furnish each employee with a statement with every payment of wages listing . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission or other; gross wages, deductions, allowances, if any" among other things. N.Y. Lab. L. § 195(3)(a).

133.    Defendants failed to provide Plaintiff wage statements that complied with New York Labor Law.

134.    Defendants' failure to provide Plaintiff legally adequate wage statements was willful and not in good faith.

135.    Plaintiff is entitled to an award of damages of two-hundred and fifty dollars for each week that she did not receive the statements required by N.Y. Lab. L. § 195(3)(a), attorneys' costs and fees, together not to exceed $2,500 and injunctive and declaratory relief. N.Y. Lab. L. § 198(1-d).

## COUNT XIII

### New York State Labor Law, Failure to Pay Promised Wages

### N.Y. Lab. L. §§ 190 *et seq.*

(Against Both Defendants)

136.    Plaintiff alleges and re-alleges the paragraphs above.

137.    The New York Labor Law requires employers to pay promised wages for all hours worked. N.Y. Lab. L. §§ 190, 191, *et seq.*

138.    For the period of Plaintiff's employment, Defendants failed to pay Plaintiff the promised wages and the corresponding overtime rate for hours over forty-four (44) hours per week.

139.    Defendants' failure to pay Plaintiff the promised wages was willful and/or not in good faith.

140.    Plaintiff is entitled to an award of damages of promised wages, liquidated damages, prejudgment interest, attorneys' fees and costs.

## COUNT XIV
### New York State Labor Law, Frequency of Payment Violation
### N.Y. Lab. L. §§ 191(1)(a)(i)
(Against Both Defendants)

141.    Plaintiff alleges and re-alleges the paragraphs above.

142.    New York Labor Law requires employers to pay manual laborers each week. N.Y. Lab. L. § 191(1)(a)(i).

143.    Plaintiff did not receive payment of wages within seven calendar days after the end of the week in which the wages were earned, in violation of N.Y. Lab. L. § 191(1)(a)(i).

144.    Defendant's failure to pay Plaintiff the promised wages with lawful frequency was willful and/or not in good faith.

145.    Plaintiff is entitled to an award of any underpayment suffered, prejudgment interest, liquidated damages, and attorneys' fees and costs.

## COUNT XV

## Breach of Contract

(Against Both Defendants)

146.    Plaintiff alleges and re-alleges the paragraphs above.

147.    Plaintiff and Defendants entered into a contract, whereby Plaintiff agreed to work for Defendants, and Defendants agreed to pay Plaintiff 30,000 rupees per month and provide full medical care, among other aforementioned promises.

148.    Plaintiff performed her obligations under the agreement.

149.    Defendants breached the terms of the Parties' contract.

150.    Plaintiff suffered injuries as a result of these actions.

151.    Plaintiff is entitled to an award of compensatory and punitive damages to be determined, attorneys' fees, and costs.

## COUNT XVI

## Fraud

(Against Both Defendants)

152.    Plaintiff alleges and re-alleges the paragraphs above.

153.    Defendants intentionally and knowingly made false misrepresentations and material omissions of fact which were false to Plaintiff regarding her labor and rights under American law.

154.    Defendants induced Plaintiff to work for Defendants in the United States by misrepresenting to Plaintiff the terms and conditions of her employment, including payment for her labor and hours that the she was required to work.

155.    Defendants induced Plaintiff to stay with them and work more hours for less wages, knowing that Plaintiff would rely on their misrepresentations and intending that their misrepresentations would induce Plaintiff to continue to work for them.

156.     Plaintiff did in fact rely on Defendants' misrepresentations to her detriment and as a result was forced to work as a domestic servant for Defendants for little pay.

157.     At the time that Defendants made the foregoing misrepresentations, material omissions of fact, and promises to Plaintiff, they had no intention of carrying out any such promises.

158.     Plaintiff suffered injuries as a result of these actions.

159.     Plaintiff is entitled to an award of compensatory and punitive damages to be determined, attorneys' fees, and costs.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief, in amounts to be determined at trial:

1.  Declaring that Defendants violated the New York Labor Law, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, and the common law;

2.  Awarding Plaintiff restitution in the full amount of her losses, punitive and compensatory damages for pain and suffering, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

3.  Awarding Plaintiff unpaid wages, including promised wages, minimum wages, overtime pay, and spread-of-hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

4.  Awarding Plaintiff statutory damages of up to $5,000 for Defendants' failure to provide Plaintiff with required notices and wage statements pursuant to New York Labor Law §§ 195(1) & 195(3);

5.  Awarding Plaintiff compensatory and punitive damages pursuant to 18 U.S.C. §§ 1584, 1589, 1590, 1592 1593A, 1594 and 1595;

6.  Awarding Plaintiff compensatory and punitive damages due to breach of contract and fraud;

7.  Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law;

8.  Awarding Plaintiff reasonable attorney's fees and costs; and

9.     Awarding Plaintiff other legal and equitable relief as the Court may deem just and

proper.

Dated:  New York, New York
        November 29, 2018

                                        Respectfully submitted,


                                        /s/ Sumani Lanka_____

                                        **THE LEGAL AID SOCIETY**
                                        Adriene Holder, *Attorney-in-Charge, Civil Practice*
                                        Karen Cacace, *Director, Employment Law Unit*
                                        Sumani Lanka, *Staff Attorney, Employment Law Unit*
                                        199 Water Street, 3rd Floor
                                        New York, New York 10038
                                        Telephone: (212) 577-3314
                                        Facsimile: (646) 616-9468

                                        **DECHERT  LLP**
                                        David Kelley
                                        1095 Avenue of the Americas
                                        New York, NY  10036
                                        Telephone: (212) 698-3500
                                        Facsimile: (212) 698-3599

                                        *Attorneys for Plaintiff*